MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. ATTIE McDUFFEY ET AL.

Decided April 11, 1908.

**1.—Railroads—Light on Switch—Responsibility.**

A railroad company using the track of another railroad company cannot relieve itself of the duty imposed by the statute of maintaining lights on main line switches by contract to that effect with the company owning the track. The duty and responsibility resting upon the company using the track is the same as if it owned the track.

**2.—Same—Statute Constitutional.**

The Act of the 29th Legislature (Gen. Laws 1905, page 77) requiring railroad companies to maintain switch lights is a legitimate exercise of the police power of the State, and is not subject to the objection that it impairs the obligation of contracts already made between railroads.

**3.—Railroads—Insufficient Headlight—Negligence.**

In a suit for damages for the death of a locomotive engineer, alleged to have been caused by the neglect of the defendant company to maintain a switch light, testimony as to the relative merits of electric and oil-burner headlights, considered, and held material and competent upon said issue of negligence.

**4.—Same—Common Law Liability.**

Although there is no statute requiring railroad companies to use electric headlights, a failure to use such lights would render such companies liable at common law if ordinary care required it.

**5.—Same—Assumed Risk.**

A locomotive fireman has the right to assume that the railroad company will perform its statutory duty to have its main line switches properly lighted, and hence he does not assume any risk from this source in riding upon an engine equipped with only an oil headlight.

**6.—Charge—Error of Omission—Practice.**

In the absence of a request to supply or cure an error of omission in a charge, such error is not cause for reversal of a judgment.

**7.—Verdict—Not Excessive.**

A verdict for $16,000 in favor of a wife and five minor children, for the death of the husband and father, is not excessive where the deceased had life expectancy of nearly thirty-four years, was earning from $70 to $110 per month, was industrious, stout and healthy, and in line of promotion, with increased earnings.

**8.—Damages—Apportionment.**

If the total amount of a verdict is not excessive, a defendant cannot complain of the manner in which it is apportioned among several plaintiffs.

Appeal from the District Court of Grayson County. Tried below before Hon. J. M. Pearson.

*Coke, Miller & Coke* and *Smith & Wall,* for appellant.

*McGrady & McMahon* and *Wolfe, Hare & Haxey,* for appellees.

TALBOT, Associate Justice.—Attie McDuffey, suing for herself and as next friend for her minor .children, Ray McDuffey, Luther McDuffey, Fred McDuffey, John McDuffey and Sammy McDuffey, hereinafter styled appellees, instituted this suit in the District Court of Grayson County, Texas, on the 22d day of December, 1906, to recover damages of appellant in the sum of $50,000 for the death of the husband and father, Sam McDuffey.

Appellees alleged in substance: That on or about November 19, 1906, the deceased, Sam McDuffey, was in the employ of appellant as fireman on one of its locomotive engines pulling a freight train; that as the train approached Tioga, Grayson County, Texas, from the north about the time it reached the switch it was derailed, Sam McDuffey being caught by the engine and so ground and mashed that he lost his life. That appellant's negligence consisted in this: That said engine was not equipped with any electric headlight and that the switch light at that point was not a good or sufficient switch light, and in fact, there was no light at said point, although it was a main line switch connected with the main line; that no switch at said point was lighted as required by law; that had said switch been properly lighted it would have shown a green light, when the switch was closed, and a red light when it was open; that the lamp in said switch stand was defective, insufficient and worthless, and the fixtures supporting such lamp were in such condition; that they were in such condition that the operation of trains over the track at that place would jar the lights out and that if said light had ever been lighted on the night in question the same would have been jarred out before appellant's train would have reached said point; that on said night the engineer of deceased had been ordered by appellant to keep the main line at Tioga, that deceased's engineer seeing no indication of an open or dangerous switch believed that he could pass said place with safety and was doing so at the rate of about twenty miles per hour; that had the red light on said switch been burning the same engineer could have seen the same and checked the speed of his train; that the headlight on its engine was only an oil burner and the engineer could not see that the switch board was red; that the switch board was on the engineer's side of the track; that he could not see this until his· engine was so close to the place where it was derailed that he could not check the speed of his train in time to avoid the injury; that if said train had been equipped with an electric headlight the engineer would have discovered the red board in time, probably, to have enabled him to have avoided said injury. That prior to the time of said wreck a south bound passenger train belonging to appellant had passed through Tioga, had left side switch open and had taken west side, that ap-

pellant's employes operating said train had negligently failed to close said switch, violative of appellant's custom as well as its rules, and that one of appellant's north bound trains passed over said road prior to the time of the wreck, had broken off the points of the switch rails, bent them out of position and otherwise disarranged appellant's track, leaving the same in such condition that when the engine of deceased reached said place it would neither keep the main track nor keep the siding but became derailed and wrecked; that the employes on the north bound train knew when they broke the switch points at said switch, yet negligently failed to report such facts; that the engineer was operating his engine at too great a rate of speed in approaching said point and was operating his train so that it was not under control as required by appellant's rules; that said engineer discovered as he approached said switch that the light was not burning and was put upon notice thereby that the track was out of repair and knew these things in time to stop, but negligently failed to do so.

The appellant answered by a general demurrer, special exceptions, general denial, and then by special answer alleged that the deceased came to his death from injuries proximately caused and contributed to by his own negligence and want of ordinary care and by that of his fellow servants; that his injuries resulted from one of the risks assumed by him; that of the defects and causes which produced his injuries, if any were produced, the deceased had full notice, or by the exercise of ordinary care on his part would have had full notice, in ample time to have avoided the same.

The cause was tried before a jury and resulted in a verdict and judgment in favor of appellees for the sum of $16,000; said amount being apportioned as follows: to Attie McDuffey, $6,000; to Ray McDuffey, Luther McDuffey, Fred McDuffey, John McDuffey and Sammy McDuffey, the sum of $2,000 each. Appellant's motion for a new trial having been overruled it perfected an appeal to this court.

Appellant's first assignment of error complains of the following paragraph of the court's charge: "The statute laws of Texas provide that it is the duty of every railway corporation operating a line of railway in Texas to place good and sufficient switch lights on all their main line switches connected with the main line and keep the same lighted from sunset until sunrise; but such statute does not apply to railways which have all their road locomotives equipped with electric headlights, nor does such statute apply to any railroad line or division on which no trains are regularly run or operated at night. Now, if you find and believe from the evidence that on the occasion when Sam McDuffey was killed, the switch connecting with the main line of railroad was not lighted at the time the train on which McDuffey was riding approached the station of Tioga, and you further find and believe from the evidence that the defendant company, its agents and employes, had not exercised ordinary care to have the same lighted; and you further believe from the evidence that the failure to have said switch lighted was an act of negligence on the part of defendant company, its agents or employes,

and that such negligence, if any, was the cause of the derailment of the engine and the cause of the death of Sam McDuffey, then you will return a verdict in favor of the plaintiff and assess their damages as hereinafter instructed."

It is contended that the statute in reference to keeping switch lights on main line switches lighted from sunset to sunrise had no application in this case, inasmuch as the undisputed testimony showed that the track, upon which the engine was running when the deceased was killed, was owned and maintained by the Texas & Pacific Railway Company and not by appellant; that the statute referred to impairs the right of contract; denies to appellant rights guaranteed to it by the Constitution of the State, and is therefore unconstitutional. We are of the opinion the court did not err in giving the charge. The switch track in question had been used by appellant, in connection with the operation of its main line of road, for about twenty years; and, notwithstanding said switch may have been owned and maintained by the Texas & Pacific Railway Company, it was the duty of appellant to use ordinary care to have it properly lighted and kept in a reasonably safe condition for the protection of its employes. It could not absolve itself from this obligation to its employes by any contract or agreement with the Texas & Pacific Railway Company that the duty of keeping up the switch should devolve upon it. We regard the duty of appellant in the respects mentioned and its liability to appellees for the death of the deceased McDuffey to be precisely the same as if the train, upon which the said McDuffey was riding when killed, had been running upon appellant's own switch.

The contention that the Act of the 29th Legislature, referred to in the court's charge, is unconstitutional, is without merit. The Legislature in the exercise of the police power of the State may control and regulate the manner in which railway companies shall transact their business; and the statute in question is but a legitimate exercise of that power. It does not impair the obligation of contracts, but is a wholesome measure, evidently passed with the view of better protecting from injury and death those employed in the dangerous business of railroading. No contract the appellant and the Texas & Pacific Railway Company may have entered into with reference to the use and maintenance of the switch at Tioga could annul or in any manner abridge the legislative power to which we have adverted. Whatever contract or arrangement they may have made concerning the joint use of said switch in the operation of their respective railroads, they did so charged with knowledge of the power of the Legislature to impose upon them the duties prescribed in the Act mentioned, and such contract was clearly subject to the imposition of such duties.

The second, third, fourth, fifth and sixth assignments complain respectively of the following testimony of the witness Kent, admitted over appellant's objections: 2. That the engine he was operating as engineer at the time of the accident had an oil burner; 3. that an electric headlight makes a brighter light than an oil burner; 4. that if his engine had been equipped with an electric headlight

he could have seen the red target of the switch a hundred yards or more; 5. that by the burner with which the engine was equipped he could see the red target only probably two car lengths or about sixty feet; 6. that as he approached the switch that night he could have stopped the train, with the braking facilities on his engine, within not much over a hundred yards. The substance of the objections urged to this testimony is: That there is no statute making it incumbent upon appellant to equip its engines with any particular kind of headlight and therefore the testimony was immaterial, irrelevant and prejudicial; that the only material inquiry in the case should have been merely whether appellant's engine was equipped with an electric headlight or oil burner, and that it was immaterial and irrelevant and prejudicial to appellant's rights to permit testimony as to the relative qualities of the two different kinds of headlights; that according to the undisputed evidence the deceased must have known that the engine upon which he was riding at the time of the wreck was equipped with an oil burner and, therefore, he assumed the risk of working on an engine so equipped, regardless of whether there were better headlights. We think there was no error in the admission of the testimony. The Act of 1905 provides that railway corporations operating a line of railway in this State shall place good and sufficient switch lights on all their main line switches and keep the same lighted from sunset until sunrise, unless its engines are equipped with electric headlights. One of the grounds of negligence alleged in this case was that the switch connecting with the main line of appellant's railroad at Tioga was not lighted, and the testimony, in our opinion, was pertinent and admissible upon that issue. If the engine was equipped with an electric headlight then the appellant was not guilty of statutory negligence in failing to have the switch lighted. If it was not so equipped and the switch was not lighted then that alleged ground of negligence was established.

Again, we think the testimony was admissible as tending to show actionable negligence for the consequences of which the appellant would be liable at common law. As argued by counsel for appellees, the fact that no statute required the use of an electric headlight did not relieve the defendant from the duty of supplying such light if a person of ordinary care engaged in the same business would have furnished it.

Touching the proposition, that the deceased must have known that the engine in question was equipped with an oil burner, and therefore assumed the risk of working on an engine so equipped, it is sufficient to say that proof of such knowledge did not authorize the trial court to assume, as a matter of law, that the deceased knew the danger of operating the engine with such a burner; and, that the deceased had the right to assume that, having elected to equip its engine with an oil burner instead of an electric headlight, appellant would perform its statutory duty to have its main line switches properly lighted, to avoid exposing him to the danger of an open switch.

The trial court charged the jury as follows: "On the other hand,

if you find and believe from the evidence, under all the facts and circumstances of the case, that the light at the switch on the night of the accident was burning, or if you find and believe from the evidence that said light at said switch was not burning, but you further find and believe from the evidence that it was not the cause of the accident, or if you further find and believe from the evidence that the defendant company, its agents and employes were not guilty of negligence in failing to have the same lighted, and you further find and believe from the evidence, under all the facts and circumstances of the case, that the defendant company, its agents or employes, in leaving the switch open, if you find it was left open, at the time and place when the wreck is alleged to have occurred, were not guilty of negligence, as that word has been hereinbefore defined, then you will return a verdict in favor of the defendant." This charge is objected to on the ground that it omits to instruct the jury that they should find for the defendant on the issue of open switch, if they should believe from the evidence that the open switch was not the cause of the accident. The objection is not well taken. The error suggested is not an affirmative error. The charge was correct, as far as it went, and, if not as full as appellant was entitled to have it, a special charge supplying the omission should have been requested. In the absence of such request no cause for a reversal is shown.

The charge of the court upon the measure of damages is assailed as being upon the weight of the evidence and misleading. We have carefully considered the charge and conclude that it is not subject to this criticism, or otherwise erroneous in any material respect. The charge, together with the special charges given at the request of the defendant, clearly and explicitly limits the jury, in determining the amount of their verdict to the consideration of the pecuniary loss sustained by the plaintiffs in the death of the deceased. Nor do we think the verdict is excessive. There is nothing in the record indicating that the jury were influenced, in arriving at the amount awarded, by passion, prejudice or other improper motive. The deceased was thirty-two years old and had an expectancy of thirty-three and ninety-two one hundredths years. He was earning from $70 to $110 per month, was industrious, stout and healthy and in line of promotion, which would probably have increased his earnings. In view of these facts we are not prepared to say that the verdict is manifestly too large.

Referring to appellant's assignments insisting that the amount awarded to each of the appellees, in the apportionment of the damages, is excessive, it is sufficient to say that this is a matter of which appellant can not complain. If the total amount is not excessive, it becomes a matter of no concern to appellant how it may be apportioned. For however apportioned, appellant was not thereby injured.

The tenth assignment is multifarious and will not be considered.

The evidence is amply sufficient to sustain the verdict of the jury. It shows that the deceased McDuffey came to his death through the negligence of appellants' servants as alleged; that the said McDuffey

was not guilty of contributory negligence and did not assume the risk, and that the appellees have sustained damages in the amount awarded by the verdict.

None of the assignments disclose reversible error, and the judgment of the lower court is affirmed.

*Affirmed.*

Writ of error refused.