it was competent upon the question of probabilities, and it cannot be seriously urged that the admission of this testimony was prejudicial to the plaintiff.

The judgment should be affirmed, with costs to respondent. All concur.

## BOYCE v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Division, Second Department.   May 1, 1908.)

1. DEATH—ACTIONS FOR CAUSING DEATH—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

In an action for negligent death, plaintiff has the burden of showing that decedent was free from contributory negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, § 78.]

2. SAME—EVIDENCE.

In an action for negligent death, the jury may, in determining the issue of contributory negligence, consider the whole evidence, and, where defendant supplied the evidence which plaintiff needed to make out a case, plaintiff is entitled to the benefit of it, though the court in its instruction states that plaintiff's evidence must outweigh that of defendant.

3. STREET RAILROADS—INJURIES TO PEDESTRIANS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Whether a pedestrian, struck by a street car while attempting to cross a street at a place other than a street intersection, was guilty of contributory negligence, held for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Street Railroads, §§ 255–257.]

4. SAME—RIGHTS OF WAY OVER TRACKS—DEGREE OF CARE REQUIRED.

While a street car has the right of way as against a pedestrian crossing the street, it has not the right to exclude the public from the use of the street, and the duty of the operators of the car and pedestrians to exercise care depends on the character of the street, its congested condition, the frequency of the running of cars, and the surrounding circumstances.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Street Railroads, § 172.]

5. SAME.

It is lawful for pedestrians to cross a street on which cars are operated at other points than street intersections.

6. SAME—EVIDENCE—CONTRIBUTORY NEGLIGENCE.

Where, in an action for the death of a pedestrian struck by a street car while attempting to cross a congested street, the evidence showed that decedent looked in both directions on leaving the curb, and that the car was then 150 feet away, traveling at a high rate of speed, the court might infer that he looked for the purpose of observing whether it was safe to cross, and that he saw the car, and warranted the inference that he determined that it was safe to attempt to cross ahead of the car, and he was not negligent as a matter of law, since he had a right to rely on the fact that the car would not be run in disregard of the safety of pedestrians constantly crossing the street.

7. DEATH—ACTIONS FOR DEATH—DAMAGES—EVIDENCE—ADMISSIBILITY.

In an action for negligent death, evidence that decedent had earned $5,000 a year and upwards, that he received $1,500 a year as secretary of a league, and that his other earnings were derived from an agency for the sale of certain patent rights and from the promotion of mining enterprises was admissible, as against the objection that a part of the earnings from the promotion business was derived from the investment of

capital, since it appeared that whatever stock decedent had in the enterprises which he promoted was allowed him for his services, and did not represent money actually invested, especially where the court charged the jury that they could not consider as a part of the earning capacity of decedent his income from any capital invested by him.

**8. SAME.**

In an action for negligent death, anything bearing on the character, qualities, capacity, or condition of decedent and the age, sex, circumstances, and condition of his next of kin is relevant on the question of damages, and every fact bearing on the capacity of decedent, whatever his occupation, is admissible, and cannot be excluded merely because his particular ability was to accumulate money by the use of money.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, §§ 68–74.]

**9. SAME—EXCESSIVE DAMAGES.**

In an action for the negligent death of a person 62 years old, in good health, with an expectancy of life of 12.28 years, who contributed to the support of his wife from $2,500 to $3,000 a year, and left a widow and three daughters, one unmarried, a verdict for $27,500 was not excessive.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, §§ 125–130.]

Appeal from Trial Term, Westchester County.

Action by Mary E. Boyce, administratrix of Henry H. Boyce, against the New York City Railway Company. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before WOODWARD, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Charles F. Brown (Bayard H. Ames and Vine H. Smith, on the brief), for appellant.

Benjamin F. Tracy (Grosvenor H. Backus, on the brief), for respondent.

MILLER, J. At about 1 p. m. on October 14, 1903, the plaintiff's intestate was attempting to cross lower Broadway from west to east, about opposite No. 32, and a short distance north of Morris street and Bowling Green, when he was struck by a south-bound electric car, and sustained injuries from which he died within an hour. The important question in the case is the one always present in this class of cases: Has the plaintiff sustained the burden of showing that the deceased was free from contributory negligence?

It was apparently assumed on argument by the learned counsel for the appellant that the defendant's witnesses strengthened the plaintiff's case, because the proposition was advanced that the plaintiff's right to succeed must be determined solely by reference to her own evidence, in view of the charge of the court that her evidence must outweigh that of the defendant. We think the jury were entitled to decide the questions before them upon the whole evidence, and that, if the defendant supplied the evidence which the plaintiff needed to make out a case, she is entitled to the benefit of it. However, we think the plaintiff's evidence presented a question for the jury, and shall consider the case from that standpoint. The plaintiff's evidence tends to show that, as the deceased left the curb, he looked both up and down Broadway, and that the car which caused his death was 150

feet away, traveling at a high rate of speed, the witnesses say from 15 to 20 miles an hour; that just as the deceased was leaving the east rail of the south-bound track he was struck by the approaching car, which had not slackened its speed, and was thrown to one side in such a manner as to strike upon his head and shoulders. A car approaching from the opposite direction was 30 or 40 feet away from the place of the accident when it occurred. The curb was 13 feet from the west rail of the south-bound track, the space between the rails was 4 feet 8 inches, and the cars overhung the rails a foot on each side. There are no street intersections on lower Broadway for a considerable distance north of Bowling Green. The accident happened at the luncheon hour, when many people are usually crossing the street. The defendant's witnesses testified that its cars could not safely be run faster than five or six miles an hour on lower Broadway because of the congested condition of the street. The plaintiff's evidence does not show that the deceased looked to the north after leaving the curb, and the court left it to the jury to decide whether he should have done so. The motorman did not give any alarm, by sounding the gong or otherwise, until the moment of the collision. The defendant's cars at the time of the accident usually ran under a headway of half a minute on lower Broadway.

The defendant contends that there is no proof that the deceased saw the south-bound car, and that he was guilty of contributory negligence as a matter of law in getting in front of a car which he ought to have seen in time to avoid being hit. The facts involved in this case distinguish it from the large number of cases cited by the appellant dealing with similar accidents, and for that reason it would be profitless to discuss those cases. There can be no difference of opinion as to the legal principles applicable, but only a difference as to the conclusions to be drawn upon applying those principles to the established facts. We may assume that the defendant's cars had the right of way, but the character of the street, its congested condition, the frequency of the running of cars, and all of the surrounding circumstances were important as bearing upon the care to be exercised by both the pedestrian and the motorman. It was not only lawful, but practically necessary, for people to cross the street at other points than street intersections or regular crossings, and the defendant could not lawfully run its cars in utter disregard of the rights of others. While it had the right of way, it by no means had the right to exclude the public from the use of the street, as it would do if permitted to run its cars as the plaintiff's evidence and the conceded circumstances proved the car in question was run. We start with the proposition that the decedent exercised some care, because he looked in both directions upon leaving the curb. We have a right to infer that he looked for the purpose of observing whether it was safe to cross, and, while the appellant argues that there is no proof that he saw the approaching car, the fact that he had an unobstructed view of it 150 feet away when he looked proves that he did see it. It is certainly permissible to infer that a man in the possession of his faculties sees what he looks at in plain sight. The fact that he looked for the purpose of determining the safety of attempting a crossing and saw

the car warrants the inference that he made a mental calculation that it was safe to attempt to cross ahead of it. The deceased had more than one thing to look out for, and it could not be said to be negligence as matter of law not to look again at the object from which he had calculated there was no danger. A car was approaching on the north-bound track. The natural thing, and the thing which we have a right to assume the decedent did, after concluding that there was no danger from the south-bound car, was to keep his eye on the car approaching on the track farthest away. The appellant argues that, if the deceased saw the south-bound car, he must have observed its reckless speed, but that does not follow. The car passed the witnesses who testified as to its speed. The deceased at least had a right to rely on the assumption that the defendant would not run its cars in utter disregard of the lives and safety of the people constantly crossing the street in that section of Broadway. If the car had been only 100 feet away, running at a proper speed, he would have had ample time to pass the 18 feet 8 inches necessary to reach a point of safety beyond the path of the approaching car. Distances as stated on paper are deceptive. One has only to take actual observation of the conditions of travel in the congested portions of the city to perceive that, if the rule contended for by the appellant is to prevail, pedestrians may never cross a street without being subject to the imputation of negligence. In crossing the streets at such points pedestrians have to make calculations and act upon them quickly, relying upon the assumption that every person will respect the rights of others. A disregard of duty by a single person will almost inevitably result in accident at such points. Of course, pedestrians must exercise alertness commensurate with the situation, but they cannot be held to be negligent as matter of law because of a miscalculation caused by another's negligence. The learned trial justice clearly presented the case to the jury in accordance with the views hereinbefore expressed, and it is unnecessary to consider further the questions presented in reference to the charge. The only other questions involved on the appeal relate to the amount of the verdict and the admission of evidence on the question of damages.

The plaintiff was permitted to show that the deceased had earned $5,000 a year and upwards, that he received $1,500 a year as secretary of the Navy League, and that his other earnings were derived from an agency for the sale of certain patent rights, and from the promotion of mining enterprises. The appellant argues that a part of the earnings from the promotion business was derived from the investment of capital, and that hence the proof of earnings from that source should have been excluded. I think a fair construction of the testimony of the plaintiff on that subject is that whatever stock the deceased had in the enterprises which he promoted was allowed him for his services, and did not represent money actually invested. She plainly testified that none of the earnings were derived from dividends on said stock, and the court charged the jury, at the defendant's request, that they could not consider as a part of the earning capacity of the deceased his income from any capital invested by

him.  Adopting the construction of the testimony contended for by
the appellant, I think no error was committed in receiving it or in
refusing to strike it out.  The two cases principally relied upon by
the appellant are Read v. Brooklyn Heights R. R. Co., 32 App. Div.
503, 53 N. Y. Supp. 209, and Hewlett v. Brooklyn Heights R. R.
Co., 63 App. Div. 423, 71 N. Y. Supp. 531.  Those cases were de-
cided on the authority of Masterton v. Village of Mt. Vernon, 58 N.
Y. 391.  That was not a death case.  While it was held that the plain-
tiff could have proven the nature and extent of the business in which
he was engaged, the part transacted by him, and, if he could, the
compensation usually paid for such services, he could not prove earn-
ings derived partly from his own efforts, partly from efforts of his
partner, and partly from invested capital.  The two cases referred
to supra were death cases.  In the Read Case it was held error to
admit evidence of the profits derived from a partnership engaged in
the contracting business to which it did not appear that the deceased
contributed anything except the money invested; and in the Hewlett
Case it was held error to admit evidence of the amount received per
load for garden truck produced by a market gardener on a farm
which he owned.  It is clear that such evidence had no bearing on
the capacity or earning power of the deceased.  The question for
the jury on this branch of the case was the pecuniary value of the
life of the deceased to his next of kin.  Upon that question anything
bearing on the "character, qualities, capacity or condition of the de-
ceased, and the age, sex, circumstances and condition of the next of
kin" was relevant.  Lockwood v. N. Y., L. E. & W. R. R. Co., 98
N. Y. 523.  In Ehrgott v. Mayor, 96 N. Y. 264–276, 48 Am. Rep.
622, the case of Masterton v. Village of Mt. Vernon, supra, is dis-
tinguished.  The value of a life cannot be determined with the mathe-
matical precision with which a man's earnings can be ascertained,
and any fact shedding light on the question is relevant.  In the case
of a man receiving a professional income or a fixed salary, the ques-
tion of invested capital does not enter, but the men most likely to
accumulate property for their next of kin are those who use invested
capital.  They leave the capital on their death, but cannot leave the
capacity which make its use profitable.  Of course, income from in-
vestments alone cannot be considered, but every fact bearing upon
the capacity of the deceased, whatever his occupation, is admissible,
and cannot be excluded merely because the particular ability was to
accumulate money by the use of money.  The evidence in this case
was admissible, and as limited by the charge presents no error.

The verdict of the jury was $27,500.  The deceased was in his sixty-
second year, in good health, and had an expectancy of life of 12.28
years.  He contributed to the support of his wife $2,500 to $3,000 a
year.  He left a widow and three daughters, one of them unmarried.
While the verdict was large, perhaps fully as large as the proof war-
ranted, it cannot well be said that it was not sustained by the proof, and
I advise that the judgment and order be affirmed.

Judgment and order affirmed, with costs.  All concur.