## MISSOURI, K. & T. RY. CO. v. WEST.

### No. 1928.   Opinion Filed August 6, 1913.

### (134 Pac. 655.)

1.   CARRIERS—Injury to Express Messenger—Pleading.   In an action brought by a widow under a state statute against a railway company for damages for injury suffered by her husband which resulted in his death, the petiiton alleged that the deceased ;was employed, by the American Express Company as an express messenger; that, in addition to his duties as an express messenger, he handled the personal baggage of the inter and intra state passengers of the railway company, which was engaged in interstate commerce.   The answer of the defendant admitted the foregoing allegations,. and further alleged that the deceased, "in performing said duties in handling said baggage, was doing so under and by virtue of his said employment by the said American Express Company."   Held, that the pleadings disclose that the deceased, a resident of the state of Kansas, suffered the injuries which resulted in his death while he was employed by the American Express Company as an express messenger, and not while he was employed by the railway company in interstate commerce, and that the action was properly brought by the widow under the state law.

2.   SAME—Evidence.   Evidence on the question of employment examined and held not to be in conflict with the allegations contained in the petition, the admissions of the answer, or the evidence of the plaintiff to the same effect.   That said evidence, construed as a whole and in connection with the pleadings, merely supplements the admissions of fact contained in the pleadings by disclosing that the deceased received his entire salary for all the work performed by him from the express company; and that he was rightfully upon the train of the railway company by virtue of an arrangement between the two companies whereby, in consideration of the work performed for the express company in handling baggage, the railway company agreed to pay to the express company one-half the sum so paid.

3.   SAME—Passenger.   An express messenger, employed and paid solely by an express company, and entitled under an agreement between the express company and a railway company to ride on the trains of the railway company in discharge of his duties, is a passenger while on such train in the discharge of his duties, and entitled to the same degree of protection.

4.   SAME—Waiver of Liability.   The contracts of employment containing waiver clauses offered in evidence by the defendant

were properly excluded because (1) it was not clearly shown that the contracts covered the employment in which the decedent was engaged at the time of his death; (2) the waiver clauses are void under the laws of the state of Kansas, where said contracts were executed; (3) the waiver clauses are void under sections 7 and 8, art. 23, Williams' Ann. Const. Okla., which provides:

"Sec. 7. The right of action to recover damages for injuries resulting in death shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation.

"Sec. 8. Any provision of a contract, express or implied, made by any person, by which any of the benefits of this Constitution is sought to be waived, shall be null and void."

5.  DAMAGES—Measure—Torts. By section 2907, Comp. Laws 1909 (Rev. Laws 1910, sec. 2872), the measure of damages for the breach of an obligation not arising from contract is the amount which will compensate for all the detriment proximately caused thereby.

6.  DEATH—Instructions—Measure of Damages. The court gave the following instruction: "If you find for the plaintiff in this case, then, in assessing the damages which she is entitled to recover, the jury should assess the same with reference to the pecuniary loss sustained by the widow and children of the deceased, and, in determining this, you may consider the probable earnings of the deceased, his age, experience, habits, health, and bodily qualifications, during what would probably have been his lifetime, if he had not been killed, so far as these matters have been shown by the evidence; but the amount you allow cannot exceed the sum mentioned in the plaintiff's petition." Held not error.

7.  SAME—Damages. The court below refused to give the following instruction: "If you should find for the plaintiff, your verdict should be for such amount as would compensate the plaintiff, for the financial loss sustained, and you are not to permit your sympathy to influence your verdict. The plaintiff is not entitled to recover for loss of the society of deceased nor for mental anguish. Your verdict must be based upon the financial loss in dollars and cents." Held not error.

8.  TRIAL—Refusal of Instructions. In order to entitle a party to insist that a requested instruction be given to the jury, such instruction must be correct, both in form and in substance, and such that the court might give to the jury without modification or omission. If the instruction as requested is objectionable in any respect, its refusal is not error.

9.  DEATH—Appeal and Error—Damages Recoverable—Question for Jury. The amount of damages recoverable in actions for

death by wrongful act is peculiarly a question for the jury, and the general rule is that the verdict of the jury will not be reversed on the ground that the damages are excessive, unless the damages are so large as under the circumstances to shock the sense of justice, or to indicate that they were the result of prejudice and passion on the part of the jury.

10. SAME—Instructions—Excessive Recovery. The instructions given by the court below correctly confined the amount of recovery to the pecuniary loss sustained by the widow and children of the deceased. In our judgment, there is sufficient evidence in the record to sustain the verdict of the jury under the most limited interpretation that can be placed upon the instruction given.

(Syllabus by the Court.)

*Error from District Court, Muskogee County;*
*John H. King, Judge.*

Action by Ivolue B. West against the Missouri, Kansas & Texas Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*Clifford L. Jackson* and *W. R. Allen* (*M. D. Green*, on the brief), for plaintiff in error.

*Chas. H. Taylor* and *S. Grant Harris* (*Benj. Martin, Jr.,* and *Jno. D. O'Brien*, on the brief), for defendant in error.

KANE, J. This was an action for damages for personal injuries resulting in death, commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below. The deceased was the husband of the plaintiff, and the injury which resulted in his death was occasioned by a collision between passenger train No. 5, commonly called the "Katy Flyer," and freight train No. 34. The primary cause of the collision was the violation of a dispatcher's train order by train No. 34, whereby the freight train, which was north bound, departed from the yards at Muskogee ahead of time and on the time of the south-bound passenger train, with which it collided. The collision occurred on the main line of the Missouri, Kansas & Texas Railway Company in Oklahoma, at a point between two and three miles north of Mus-

kogee and just south of the Arkansas river. There was no dispute as to the collision, the cause of it, or that it resulted in the death of Mr. West, the husband of the plaintiff. The deceased and the plaintiff were residents of the state of Kansas. No personal representative was appointed, and this action was commenced by the widow in her own name for the benefit of herself and four minor children, the fruit of her marriage with the deceased, under a state statute which provides for such actions. It is alleged in the petition that, "at and prior to the time of the death of said William B. West, deceased, he was employed by the American Express Company as express messenger upon the express cars operated by said defendant company over its said line of railway between said city of Parsons, Kan., through the state of Oklahoma to points beyond in the state of Texas; that in addition to his duties and employment as express messenger, as aforesaid, said William B. West also engaged in handling passenger baggage upon the express cars of said defendant company." The answer of the defendant was (1) a general denial; (2) that even if the deceased was injured and killed at the time and place and in the manner alleged in the petition, that his injuries and death were not due to any negligence on the part of the defendant; and (3) that the defendant is a common carrier engaged in commerce between the several states, that the passenger train described by plaintiff in said petition as the "Katy Flyer" was at all times mentioned therein an interstate train, engaged in the movement of interstate commerce, and that said freight train starting from Muskogee in the state of Oklahoma, and proceeding on its line of railway to Parsons, in the state of Kansas, was at all times mentioned in plaintiff's petition engaged in moving interstate commerce.

The three succeeding paragraphs of the answer referred to three separate contracts of employment, which it is alleged were made and entered into by and between the deceased and the American Express Company, the first two being ex-

ecuted in 1893, and the third in 1896. It is then alleged in effect that by the terms of said contracts it is provided that, in consideration of the premises and of the employment of the deceased by the express company, he was to assume all risk of accident and injury which he should meet with or sustain in the course of his employment, whether occasioned or resulting by or from the gross or other negligence of the railway company upon whose lines his duties were to be performed, and whether resulting in his death or otherwise; that, in case of any injury suffered by deceased, he would at once, without demand, and at his own expense, execute and deliver to the corporation or person owning or operating the railway, stage, or steamboat line upon which he should be so injured a good and sufficient release under his hand and seal of all claims, demands and causes of action arising out of such injury, or connected with, or resulting therefrom, etc. The answer closes with the following averment:

"Further answering, defendant admits that at and prior to the death of the said William B. West, deceased, he was employed by the American Express Company as express messenger upon the express cars operated by the defendant railway company over its line of railway between the city of Parsons, Kan., through the state of Oklahoma to points beyond in the state of Texas, and admits that the deceased, William B. West, in addition to his employment as express messenger by the said American Express Company, was also engaged in handling passenger baggage upon express cars of the said defendant railway company, and defendant railway company states that said William B. West, deceased, in performing said duties in handling said baggage, was doing so under and by virtue of his said employment by the said American Express Company, and that such handling of such baggage by said West was for and in behalf of and under the direction of said railway company."

The reply in effect denied each and every allegation in the answer contained, save as in the petition stated, or as thereinafter admitted, stated, or qualified, and alleged that, if the instruments mentioned in the answer were ever signed

by William B. West, they were so signed and entered in the state of Kansas during the years 1893 and 1896, and that by virtue of the laws of the state of Kansas, and for want of consideration, said pretended contracts, or the evidence thereof purporting to exist in Exhibits A and B attached to the answer of the defendant, were and are wholly void and of no effect. To this reply the defendant filed a general denial. Upon the issues thus joined, the cause was tried to a jury, which returned a verdict in favor of the plaintiff in the sum of $15,000, upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

By a former opinion of this court, the judgment of the court below was affirmed, and the cause is now before us upon rehearing. The cause was ably and fully briefed and argued orally upon the original submission and again upon rehearing by counsel for both sides. After a careful re-examination of the record and briefs and the points presented by counsel in their oral arguments, we are still of the opinion that the conclusion formerly reached is correct. The assignments of error may all be grouped under the following heads: (1) The defendant in error herein is not the proper party to maintain this action; (2) error of the court below in giving certain instructions, and refusing to give certain instructions, which presented the same issue in another way; (3) the trial court erred in declining to admit in evidence the three written contracts attached to the answer pertaining to the employment of the deceased by the express company; (4) the amount of damages awarded is excessive.

The first assignment is based upon the theory that the pleadings and evidence show that the deceased suffered the injury which resulted in his death while he was employed by the railway company in commerce between the states, within the meaning of the act of Congress relative to the liability of common carriers by railway to their employees in certain cases, and therefore the cause of action accrued to the personal representative of the deceased for the bene-

fit of the surviving widow and children. This conten-
tion cannot be sustained. It is specifically alleged in the
petition that the deceased "was employed by the American
Express Company as an express messenger." This is the
only allegation to be found in the petition that attempts to
state specifically by whom the deceased was employed, and
there are no allegations elsewhere in the petition which neces-
sarily negative that positive statement, or from which it may
be reasonably inferred that the deceased was also employed
by the railway company. But if the clear meaning of the
specific allegation of the petition upon that point was clouded
by the allegation which immediately follows it, to the effect
that the deceased was also engaged in handling passenger bag-
gage upon the express car of said defendant railway com-
pany, the answer of the defendant makes the situation clear.
In its answer the defendant, by way of admission, uses the
language of the petition, "that at and prior to the time of
the death of said William B. West, deceased, he was em-
ployed by the American Express Company as express mes-
senger upon the express cars operated by the defendant rail-
way company over its line of railway between the city of
Parsons, Kan., through the state of Oklahoma to points be-
yond in the state of Texas, and admits that the deceased,
William B. West, in addition to his employment as express
messenger by the said American Express Company, was also
engaged in handling passenger baggage upon the express car
of the said defendant railway company," and immediately adds,
"and defendant railway company states that said William B.
West, deceased, in performing said duties in handling said
baggage, was doing so under and by virtue of his said em-
ployment by the said American Express Company."

The foregoing admissions are in entire harmony with
the balance of the answer, which contains allegation after
allegation positively stating that the deceased was employed by
the express company continuously for a great many years
prior to his death, and the contracts of employment between

the express company and the deceased are attached to the answer and made a part thereof, and certain waivers contained therein are relied upon as a defense.

From the pleadings alone it is clear that the deceased suffered the injuries which resulted in his death while he was employed by the express company, and not while he was employed by the railway company, and that the parties did not attempt to join an issue of fact upon that question. Counsel for the railway company seem to base their contention on this point solely upon the theory that allegation to the effect that the deceased was also engaged in handling personal baggage, in addition to his duties as express messenger, is sufficient to create the presumption that he was jointly employed by the railway company, and cites *M., K. & T. Ry Co. v. Reasor,* 28 Tex. Civ. App. 302, 68 S. W. 332; *Vary v. B., C. R. & N. Ry. Co.,* 42 Iowa, 246, and *Oliver v. Northern Pac. Ry. Co.* (D. C.) 196 Fed. 432, as being authority to that effect. Those cases are so clearly distinguishable from the one at bar that we do not deem it necessary to notice them further than to say that, in our judgment, they are in no way in conflict with the conclusion herein reached. It is not disputed that the deceased handled interstate baggage; but the answer explains that in handling said baggage he was doing so under and by virtue of his said employment by said American Express Company. Moreover, there are no averments in the pleadings from which an inference may be reasonably drawn that any contract of employment was ever entered into between the deceased and the railway company.

The language of the act of Congress carries with it the idea and the essence of a contract. To be employed by one is to be engaged in his service, to be used as an agent or substitute in transacting his business, to be commissioned and intrusted with the management of his affairs. In our judgment, the words, "while employed by such carrier," construed in connection with the context, is equivalent to "while hired by such carrier," which implies a request and a contract

for compensation. The persons falling within the meaning of the act are those hired by the railway company, or those who are working for it at its request and under an agreement on its part to compensate them for their services. *U. S. v. Nourse, Fed. Cas. No.* 15,901; *McCluskey v. Cromwell,* 11 N. Y. 593; *Bingham, Executrix, v. Scott,* 177 Mass. 208, 58 N. E. 687. The case of *M., K. & T. Ry. Co. of Texas v. Blalack* (Tex.) 147 S. W. 559, is directly in point on the question now under consideration. In that case the railway company pleaded that Blalack was in its employ at the time he was injured; but the only proof of employment was that Blalack handled baggage, which was the work of an employee of the railway company. The court said:

"Where, in an action against a railway company for negligent death, the evidence of plaintiff showed that decedent was an agent of an express company, employed and paid by it, and entitled to ride on the trains of the railway company, under a contract between the two companies, and that he was killed through the negligence of the employees in charge of the train, the railway company, engaged in interstate commerce, must show that plaintiff's claim was unfounded, and that decedent was in its employ to avail itself of the federal Employer's Liability Act (Act April 22, 1908, c. 149, 35 St. at L. 65 [U. S. Comp. St. Supp. 1911, p. 1322], and, where it failed to do so, the state law will govern the right to recover."

On rehearing it is contended that the evidence adduced at the trial disclosed that the injury was suffered while the deceased was employed by the railway company, and that, even if no issue of fact on the question of employment was joined by the pleadings, the case as to parties must be governed by the Employer's Liability Act. It is familiar law that, if during the course of the trial it develops that the real case is not controlled by the state statute, but by the federal statute, and the case is commenced under the former, the case pleaded is not proved, and the case proved is not pleaded. *St. Louis & S. F. Ry. Co. v. Seale,* 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed.—. But, in our judgment, that rule is

not applicable here. The evidence of Mr. Adams, an officer of the express company, relied upon by counsel, is in no way inconsistent with the allegations of the petition and the admissions of the answer, to the effect that the deceased was employed by the express company at the time of his death. It is true that Mr. Adams testified that the deceased "was a joint messenger and baggageman," and that "he worked for both companies" (which expressions under proper circumstances might be held sufficient to take the case to the jury on the question of employment. *Railway Co. v. Reasor, supra*); but upon cross-examination it was clearly shown that the witness merely drew erroneous conclusions from admitted facts, and that his testimony as a whole supplemented the allegations of the petition and the admissions of the answer by more fully disclosing the relations existing between the express company and the deceased, and the express company and the railway company, and made it more clearly apparent that the decedent was rightfully on the train. Construing the allegations of the petition, the admissions contained in the answer, and the evidence of Mr. Adams together, a state of facts is disclosed almost identical with that in the Blalack case, *supra*. From a careful investigation of the entire record, we are persuaded that, if we should reverse the judgment of the court below, upon the ground that the deceased suffered the injuries which resulted in his death while he was employed by the railway company, we would compel the widow to abandon the tenable theory upon which she brought the case, and to accept one less advantageous to her and her children, and one which it would be difficult, if not impossible, to establish.

We therefore find with the court below that the pleadings and the evidence conclusively show that the deceased suffered the injuries that resulted in his death while he was employed by the express company, and not while he was employed by the railway company in interstate commerce, within the meaning of the federal Employer's Liability Act. It fol-

lows that under the issues joined and the evidence adduced the action was governed by sections 5945 and 5946, Comp. Laws 1909 (Rev. Laws 1910, secs. 5281 and 5282), as modified by section 7, art. 23, Williams' Ann. Const. Okla. The first of these sections provides for an action for injury resulting in death by wrongful act, which must inure to the widow and children, if any, or next of kin; the second, that where the party whose death has been caused, as set forth in section 5945 (5281), is at the time of his death a resident of any other state or territory, and no personal representative has been appointed, the action provided for in said section may be brought by the widow. And the constitutional provision provides that:

"The right of action to recover damages for injuries resulting in death shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation."

The second contention is predicated upon the following action of the court: The court instructed the jury as follows:

"If you find for the plaintiff in this case, then, in assessing the damages which she is entitled to recover, the jury should assess the same with reference to the pecuniary loss sustained by the widow and children of the deceased, and, in determining this, you may consider the probable earnings of the deceased, his age, experience, habits, health, and bodily qualifications, during what would probably have been his lifetime, if he had not been killed, so far as these matters have been shown by the evidence; but the amount you allow cannot exceed the sum mentioned in the plaintiff's petition."

The plaintiff in error requested the court to charge the jury as follows, which request was refused:

"If you should find for the plaintiff, your verdict should be for such amount as would compensate the plaintiff for the financial loss sustained, and you are not to permit your sympathy to influence your verdict. The plaintiff is not entitled to recover for loss of the society of deceased nor for mental anguish. Your verdict must be based upon financial loss in dollars and cents."

The principal ground of complaint as to the instruction given is that the term "pecuniary loss," as used therein, does not state with sufficient detail the specific elements of damage which the jury were permitted to take into consideration in assessing the amount of recovery. In our judgment, the instruction given is sufficiently clear to enable the jury to properly assess the damages, and is · in accord with section 2907, Comp. Laws 1909 (Rev. Laws 1910, sec. 2872), which provides that:

"For the breach of an obligation not arising from contract, the ·measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

Where the instruction given reasonably and fairly presents the issue involved, the judgment of the court below will not be disturbed on appeal, because a requested instruction which presented the same issue in another form was refused. Especially is this true when the instruction requested upon the same issue was less accurate in its statement of the law than the instruction given. The requested instruction was erroneous in several particulars. The first clause is misleading, for the reason that the statute upon which the action is based clearly provides and contemplates that the measure of damages shall be such amount as will fully compensate both the widow and the children, for whose benefit the action accrues. The first clause of the requested instruction is that the verdict of the jury should be for such an amount as would compensate the plaintiff for the actual loss sustained, and does not mention the children. The latter part of the instruction is also objectionable, for the reason it does not mention the right of the minor children to compensation for any pecuniary loss they may sustain in respect to the society of the father, as involved in the elements of fatherly care, advice, and moral instruction, and education.

It is well settled that, in order to entitle a party to insist that a requested instruction be given to the jury, such instruction must be correct, both in form and in substance, and such that the court might give to the jury without modification or omission. If the instruction as requested is objectionable in any respect, its refusal is not error. A party cannot complain that the court did not, of its own motion, modify and correct the request, and then give it as corrected. No such duty rests upon the court. When a part only of a requested instruction is erroneous, the whole may properly be refused. Blashfield on Instructions to Juries, sec. 137.

The third assignment of error arises out of the action of the court in refusing to admit in evidence the contracts of employment containing the waivers. We do not think the action of the court below in that regard was erroneous. In the first place, it is not clear that the contracts offered cover the employment in which the deceased was engaged at the time of his death. That would be a sufficient ground for excluding them. It also appears that the contracts were Kansas contracts. If we hold that they must be construed according to the laws of that state, we find that under the laws of Kansas, as construed by the highest court thereof, the waiver clause is held to be void. *Sewell v. A., T. & S. F. Ry. Co.,* 78 Kan. 17, 96 Pac. 1007. And if we hold that the contract is by its terms tied to the tort, and the law of the place of the tort must govern (*Smith v. A., T. & S. F. Ry. Co.,* 194 Fed. 79, 114 C. C. A. 157), as the cause of action arose since statehood, we must hold the waiver clause void under section 8, article 23, Williams' Const. Okla., which provides that:

"Any provision of a contract, express or implied, made by any person, by which any of the benefits of this Constitution is sought to be waived, shall be null and void."

From an examination of the record, we are not prepared to say that the verdict is excessive. The amount of damages

recoverable in actions for death by wrongful act is peculiarly a question for the jury, and the general rule is that the verdict of the jury will not be reversed on the ground that the damages are excessive, unless the damages are so large as under the circumstances to shock the sense of justice, or to indicate that they were the result of prejudice and passion on the part of the jury. 8 Am. & Eng. Enc. of Law (2d Ed.) pp. 912, 932.

Section 2907, Comp. Laws 1909 (Rev. Laws 1910, sec. 2872), provides that:

"For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

The instruction given by the court below correctly confined the amount of recovery to the pecuniary loss sustained by the widow and children of the deceased. In our judgment, there is sufficient evidence in the record to sustain the verdict of the jury under the most limited interpretation that can be placed upon the instruction given.

The evidence is to the effect that deceased was 38 years of age, in good health of body and mind, with an earning capacity of $83.33 per month at the time of his death; that his earning capacity steadily increased from the date of his employment by the express company to the time of his death, his salary having been advanced four times during that time. The evidence also showed that he was a man of good habits, industrious, ambitious, attentive to his family, and that he contributed to the support of his wife and family all of his salary, except from $3 to $5 per month, which he retained for his personal expenses. His expectancy of life was admitted to be 29.62 years. The family consisted of a wife, two years younger that the deceased, and four minor children, one of whom was born after his death. Considering the education and clothing of the children and their

increasing expenses, it may be reasonably inferred that each would fairly require its proportionate share of the earnings. There is evidence reasonably tending to show that the deceased would have apportioned among the members of his family a preponderating share of his salary. Upon the basis of an equal division, the widow and children would have received as their portion of his earnings the sum of $24,682.14 during his expectancy. This computation does not take into account what might have been saved from the earnings of deceased during his lifetime and made to produce interest, nor any damage occasioned to the children on account of loss of mental, moral, or physical training or advice of the father. It was shown that the cash earnings during the expectancy of the deceased at the rate proven would have reached approximately $30,000. We think that, in view of the large family entitled to support from those earnings, and the proven thrift, industry, frugality, and advancement being made by the deceased at the time of his death, and his generous contributions to the support and maintenance of the wife and children, the verdict by the jury of $15,000, just one-half of the cash earnings of the deceased during his expectancy, is not excessive. The following are a few of the cases where substantial verdicts under somewhat similar circumstances have been sustained: *Louisville Ry. Co. v. Shivell's Adm'r* (Ky.) 18 S. W. 944; *Redfield v. Oakland Consol. St. R. Co.,* 110 Cal. 277, 42 Pac. 822, 1063; *East Line, etc., Ry. Co. v. Smith,* 65 Tex. 167; *Reilly v. Brooklyn Heights R. Co.,* 65 App. Div. 453, 72 N. Y. Supp. 1080; *St. Louis, etc., Ry. Co. v. Cleere,* 76 Ark 377, 88 S. W. 995; *Chesapeake, etc., Ry. Co. v. Hendricks,* 88 Tenn. 717, 13 S. W. 696, 14 S. W. 488; *M., K. & T. Ry. Co. v. Williams* (Tex. Civ. App.) 117 S. W. 1043; *Harris v. Puget Sound El. Ry. Co.,* 52 Wash. 289, 100 Pac. 838; *M., K. & T. Ry. Co. v. McDuffey,* 50 Tex. Civ. App. 202, 109 S. W. 1104; *Boyce v. N. Y. City Ry. Co.,* 126 App. Div. 248, 110 N Y. Supp. 393.

Finding no reversible error in the record, the judgment of the court below is affirmed.

HAYES, C. J., and WILLIAMS and TURNER, JJ., concur; DUNN, J., absent.