## JOHN C. HENRY v. PITTSB. ETC. R. CO. ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued November 5, 1890—Decided January 5, 1891.
[To be reported.]

1. Unless restrained by contract, a corporation or an individual may suspend or discharge an employee, at pleasure, with or without cause;

---

* See Penna. R. Co. v. Raiordon, 119 Pa. 577.

Statement of Facts.

and the fact that the employee's reputation is affected by unfavorable inferences drawn from the suspension, or discharge, itself, will not render the employer liable in damages.

2. A railroad company is not responsible, under the rule of respondeat ouster, for a libel of an employee published by its general superintendent without authority from the corporation; nor, is the superintendent himself responsible, when there is no evidence submitted that the libelous article was dictated or even inspired by him.

3. In this case, even if the superintendent had furnished all the information contained in the publication, as imputed to him by the plaintiff, he would not thereby be responsible for the libel, in the absence of proof submitted that he went one step further, and procured its publication.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 214 October Term 1890, Sup. Ct.; court below, No. 322 April Term 1888, C. P. No. 2.

On March 1, 1888, John C. Henry brought trespass against the Pittsburgh & Lake Erie Railroad Company and Elliott Holbrook.

The first count of the plaintiff's statement of claim averred, in substance, that on December 19, 1887, the defendant company, through said Holbrook, who was its general superintendent, maliciously and without probable cause suspended the plaintiff from the position of traveling passenger-agent of said company, publicly, and in such manner as necessarily to lead the public to believe that such suspension was the result of charges of dishonest conduct previously made and sustained; that the defendant company had the plaintiff shadowed by detectives; and, on February 7, 1888, followed up the suspension by discharging him in such a manner as necessarily to lead to the inference that the discharge was the result of an investigation confirming such charges of dishonest conduct in the plaintiff's employment. The second count charged that the defendant company, "through the said general superintendent, Elliott Holbrook," on December 20, 1887, and January 9, 1888, respectively, caused to be published in a newspaper called the Pittsburgh Times certain libelous articles the substance whereof was that the plaintiff, and other employees of said company, had been guilty of dishonest conduct, robbing the company and appropriating the money to their own use. The statement

Statement of Facts.

averred, further, that an investigation subsequently made had established the plaintiff's innocence and uprightness, and alleged general and special damages.

The defendants demurred to each count of the statement of claim. After argument of the demurrer, the court, WHITE, J., entered judgment sustaining the demurrer to the first count,[1] overruling the demurrer to the second count, and allowing the defendants twenty days to plead to the same. Thereupon the defendants pleaded not guilty, to the second count.

At the trial on May 13, 1890, the testimony for the plaintiff tended to show the following facts:

In December, 1887, the defendant Holbrook was the general superintendent of the defendant company, having "charge of the operation and maintenance of the company's railroad and business." The plaintiff, as traveling passenger-agent, constituted a part of the passenger-ticket department of the company. That department, and the names of the persons constituting it, had regularly been called to the attention of the public, by advertisments, posters, etc., relating to the sale of tickets. In the month stated, Holbrook was specially authorized by the company to institute an investigation of the passenger-ticket department, and to take such steps as might be necessary for that purpose; and on December 19, 1887, he began proceedings by suspending all the officers and employees, composing that department, and put their offices, accounts and papers in the charge of persons employed to conduct the investigation. On the day last mentioned, the city editor of the Pittsburgh Times detailed H. C. Green, a reporter for that newspaper, to interview Holbrook in regard to this matter, communicating to Green some information upon the subject, without naming the source from which it had come. Green called upon Holbrook, introduced himself as a reporter from the Times, repeated some of the information received from the city editor, and proceeded to question him about it. Holbrook was guarded and reluctant to talk, but gave Green information as to the status of the affair, the substance of which was that no one was accused of defrauding the company as yet, but that the business of the passenger-ticket department was to be investigated, to ascertain whether there had been any irregularities therein. On the following morning, the Times published an article which in-

### Statement of Facts.

cluded the substance of Green's interview with Holbrook, but went further and intimated the existence of delinquencies in the passenger-ticket department, mentioning that the plaintiff and other officials in that department had been suspended.

On January 9, 1888, an article was published in the Times, purporting to give an interview between superintendent Holbrook and a reporter for that paper, which represented Holbrook as saying, in substance, that a report, showing the result of the investigation respecting the passenger-ticket department, would be presented at a meeting of the directors of the company to be held that day ; that, although the report was not completed, at the time of the interview, it was an assured certainty that the railroad company had been deprived of a large amount of revenue by the manipulations of persons in the office of the general passenger-agent who had been "feathering their own nests and neglecting the interests of the company, to care for themselves." George I. Reed, the reporter who wrote that article, testified that Holbrook took exception, after its publication, to the correctness of certain parts of it purporting to give statements made by him, but that it accurately set forth the substance of the language used by him, in the interview, and that the facts therein communicated to the wit- ness were given in response to a request for them, made by him on behalf of the Times.

Reporters for the Times and other newspapers testified to interviews with the president of the defendant company, occurring subsequently to the publication in the Times of January 9, 1888, in which the president, in response to requests for information respecting the passenger-department investigation, told them to " go to Holbrook." One witness, a reporter for the Commercial Gazette, testified that he was so told by the defendant's president, on January 8, 1888.

At the close of the testimony for the plaintiff, the court, WHITE, J., on motion of counsel for the defendant railroad company, entered judgment of compulsory nonsuit as to said company, with leave, etc.[2]

Counsel for the defendant Holbrook then moved the court to enter a compulsory nonsuit as to him, for the reasons (1) that the evidence did not show any libelous matter ; (2) that no

Arguments.

publication of a libel by Holbrook was shown; and (3) that, on the plaintiff's statement of claim, there could be no recovery against Holbrook personally.

By the court:

Sustaining the motion for compulsory nonsuit, as to the Pittsburgh & L. E. R. Co., it is suggested by plaintiff's counsel, places the plaintiff in an embarrassing position. In view of this fact, and in order to have the legal question first settled, it may be better to sustain the present motion. It is therefore ordered that judgment of compulsory nonsuit be entered as to Elliott Holbrook also; with leave, if counsel so desire, to file motion to take off the nonsuit, as to either or both defendants, to be heard by the court in banc.[3]

Afterwards, the court having refused a motion to take off the nonsuits,[5] the plaintiff took this appeal, specifying that the court erred:

1. In sustaining the demurrer to the first count of the statement of claim.[1]

2. In granting the motion for a compulsory nonsuit as to the railroad company.[2]

3. In granting the motion for a compulsory nonsuit as to Holbrook.[3]

5. In refusing to take off the nonsuits.[5]

*Mr. S. B. Schoyer* (with him *Mr. S. Schoyer, Jr.,* and *Mr. W. B. Rodgers*), for the appellant:

1. The main question, raised by the second count of the statement of claim, is whether the Pittsburgh & Lake Erie Railroad Company is responsible for the libel published by its superintendent, assuming that the newspaper articles published by him were libelous. Upon this question we submit the following propositions: (a) If it were within the scope of Holbrook's employment and authority, to give the public such information as he saw fit concerning the affairs of the road, and, in so doing, he published a libel, the company would be liable therefor, even though it had expressly forbidden the libel: Penna R. Co. v. Vandiver, 42 Pa. 365; Phila. Traction Co. v. Orbann, 119 Pa. 37; Derby v. Railroad Co., 14 How. 468; Hawes v. Knowles, 114 Mass. 518; Phila. etc. R. Co. v. Quigley, 21 How. 202; Goddard v. Railway Co., 57 Me. 202

Arguments.

(2 Am. Rep. 39). (*b*) If he had implied or ostensible authority to make any statements at all to the public, concerning the road or its management, the publications complained of were within the scope of his authority: Bacon v. Railroad Co., 55 Mich. 224 (54 Am. Rep. 372); s. c. 20 Am. & Eng. R. Cas. 633. (*c*) Whether Holbrook had such authority, was for the jury, and it was unnecessary to show that he was specially authorized.

2. However, his authority may be inferred: (*a*) from the fact that he held the position of general superintendent: Giles v. Railway Co., 2 El., B. & E., Q. B., 822; Penna R. Co. v. Vandiver, 42 Pa. 365; Railroad Co. v. Rodriguez, 47 Ill. 188; (*b*) from the fact that the passenger-ticket department, and the persons composing it, were brought into intimate relations with the public, both by advertisements and the nature of its business, and the fact that Holbrook, aside from being general superintendent, had special charge of the investigation: Fogg v. Railroad Co., 148 Mass. 513. Moreover, by retaining Holbrook in its employ after notice that he had committed the tortious act, and without disavowing the libel published by him, the company ratified the publication: Bass v. Railway Co., 42 Wis. 654 (24 Am. Rep. 437); Fogg v. Railroad Co., 148 Mass. 513. A railroad company is liable in damages for a libel: Phila. etc. R. Co. v. Quigley, 21 How. 202. The publication in question was the act of Holbrook. One who makes a statement to a newspaper reporter, with knowledge that he will be sure to publish it, and without any effort to restrain his so doing, is liable for the publication, even though the statement communicated be not published verbatim, so long as its sense and substance appear: Odgers, Libel and Slander, 154 et seq.

3. As to the first count of the statement of claim, we contend that a railroad company has no right publicly to suspend, pending an investigation, without afterwards either announcing the innocence of the party suspended or sustaining the charge; that, having suspended in such manner as to lead to the belief that the suspension was the result of charges of dishonest conduct, it has no right to discharge without explanation and in such a manner as to lead the public to believe that the discharge is the result of the investigation conducted during the suspension; and that it cannot suspend maliciously, unnecessarily and with-

Arguments.

out probable cause, and in such an injurious, harsh and op-
pressive manner as to cause it to be inferred that the suspen-
sion was the result of charges of dishonest conduct; and the
demurrer admits that this was done in the present case.    An
action lies where a lawful act is done in an illegal, negligent or
unreasonable manner, and injury results: Hilliard on Torts, 18,
23, 24; Cooley on Torts, 688, 692, 694.    Such an investiga-
tion of an employee is not a right, but a privilege, subject to the
condition that it be undertaken upon probable cause, and be
fairly and reasonably conducted: Phila. etc. R. Co. v. Quigley,
21 How. 202.    An actionable injury to reputation may be in-
flicted by acts as well as by words: Odgers, Libel and Slander,
7, 8.

   *Mr. P. C. Knox* and *Mr. W. A. Stone* (with them *Mr. James
H. Reed*), for the appellees :
   1. Clearly, the first count does not state a legal cause of ac-
tion.    There is no averment that the plaintiff's public suspen-
sion was attended with any undue or unnecessary publicity, and
it amounts to no more than a charge that he was suspended
maliciously.    The defendant company had a right to suspend
the plaintiff, to investigate his accounts, to have his mode of
life and conduct investigated by persons employed for that pur-
pose, and to discharge him, with or without cause; and the ex-
istence of malice could not create any liability for that which
the defendants had a legal right to do: Payne v. Railroad Co.,
13 Lea (Tenn.) 507; s. c. 18 Am. & Eng. R. Cas. 119; Jen-
kins v. Fowler, 24 Pa. 309; Covanhovan v. Hart, 21 Pa.
495 ; Glendon Iron Co. v. Uhler, 75 Pa. 471; Story v. Odin,
12 Mass. 157 ; Mahan v. Brown, 13 Wend. 261 (28 Am. Dec.
461) ; Railroad Co. v. Douglass, 5 Seld. 447 ; Lasala v. Hol-
brook, 4 Paige 169 (25 Am. Dec. 524) ; Thurston v. Hancock,
12 Mass. 220; Cooley on Torts, 278, 688; Stevenson v. New-
ham, 13 C. B. 285; Macy v. Childress, 2 Tenn. 442; Heywood
v. Tillson, 75 Me. 225 (46 Am. Rep. 373) ; 2 Greenl. Ev.,
§ 453.
   2. Assuming that Holbrook procured the publication of the
articles in question, and that they were libelous, the railroad
company is not responsible for the wrong.    Such publication
was not within the scope of his employment: Cooley on Torts,

121; 2 Wood's Ry. Law, 1202, 1206, 1213, 1217; Towanda
Coal Co. v. Heeman, 86 Pa. 418; Smith, M. & S., § 339;
Waterman on Corp., § 3; Southern Exp. Co. v. Fitzner, 59
Miss. 581 (42 Am. Rep. 379) ; Odgers, Libel & S., §§ 411, 412,
416; Flower v. Railroad Co., 69 Pa. 210. The inquiry, then,
narrows itself down to the question whether the act of the ser-
vant was done by the authority of the corporation, and the evi-
dence is insufficient to establish either an express or an implied
authority to Holbrook from the company to make the publica-
tions. In all the cases in which corporations have been held
for libel, the publication has been by order of either the board
of directors or of an official having express authority to make
it. But, it is submitted that the proof was not sufficient to
connect Holbrook with the publication of the articles in ques-
tion by showing that he ever "requested, procured or com-
manded " the publication of either of them. The utmost that
was shown was the communication of corrections of unfounded
information which the newspaper reporters already had.

OPINION, MR. CHIEF JUSTICE PAXSON:

The plaintiff seeks to hold the defendant company responsi-
ble in damages, because (a) he was, as he alleges, suspended
from the service of the company maliciously, and without prob-
able cause, under circumstances which tended to cast suspicion
upon his integrity, and that, after an investigation, he was not
reinstated, although the result of said investigation showed
that he had committed no fraud upon the company; and
(b) that the defendant company, through its general superin-
tendent, Elliott Holbrook, (one of the defendants,) at the time
of such suspension and at various times from then until the
time of the discharge, and thereafter, caused to be published
in the newspapers in the city of Pittsburgh various libelous
articles, the substance of which was that the plaintiff and his
co-employees had been guilty of dishonest conduct in their
employment; had robbed the company, and appropriated the
money to their own use; that well-grounded suspicions and
charges of this fact had caused the suspension aforesaid, and
that subsequent investigation had established the truth of these
suspicions and charges. It was further alleged that the said
Elliott Holbrook was the highest officer of the company in

Pittsburgh, and had general authority to give the public what-
ever information he saw fit, in reference to the affairs of the
road; to decide what information was proper to be so given,
and to speak for the company generally in reference to the af-
fairs of the road coming within his department; and that he
personally conducted and controlled the investigation aforesaid.

It appeared that the plaintiff was in the employ of the de-
fendant company, as traveling passenger-agent, in the passenger-
ticket department.   By reason of alleged irregularities in this
department, the general superintendent, in the year 1887, sus-
pended all the employees therein, pending an investigation.
The right to do this was not, and could not well be disputed,
without a greater shock to the relations of employer and em-
ployee than we are disposed to sanction.   A railroad corpora-
tion, or an individual, may discharge an employee with or
without cause, at pleasure, unless restrained by some contract;
so that I do not see that the questions of malice and want of
probable cause have anything to do with the case.   If an em-
ployer, in discharging a clerk or other employee, casts an un-
just imputation upon his character, that is quite another matter,
for which he might be held responsible.   In this case, no asper-
sion appears to have been cast upon plaintiff's character, except
such as might be inferred from his suspension.   No charge was
made against him.

The other charge, that the railroad company was responsi-
ble for a libel published by its general superintendent, is yet
more novel.   It would certainly be carrying the doctrine of
respondeat superior to an extreme length.   The doctrine is
hard enough as it is, and we are not disposed to push it fur-
ther.   There was not a scintilla of testimony to show that the
company published a libel, authorized any one else to do so, or
knew that it had been done.   It appears that when it became
known that irregularities were supposed to exist in the ticket
department of the company, a number of reporters, with the
irrepressible enterprise for which they are somewhat celebrated,
proceeded, in their own way, to investigate the matter and lay
the fruits thereof before the public through the Pittsburgh
newspapers.   But there was no evidence that these articles
were dictated or even inspired by the company, or by Mr. Hol-
brook.   That he was beset by the reporters for information is

Statement of Facts.

certain; that he gave very little, and that very reluctantly, is equally certain. And even if he furnished all the information which the plaintiff imputes to him, it would not make him responsible for a libel, unless he went one step further, and procured its publication. Of this there was no evidence. The proprietors of the respective newspapers may or may not be responsible in damages for the publication; the defendant company and Mr. Holbrook clearly are not.

We are of opinion that the plaintiff has no case, and that the nonsuit was properly entered.

Judgment affirmed.

