**Charles W. FERGUSON, Plaintiff,**

v.

**FREEDOM FORGE CORPORATION, t/d/b/a Standard Steel, A Corporation, Titanium Metals Corporation of America, A Delaware Corporation, David D. Borland, an individual, and Joseph W. Wapner, an individual, Defendants.**

**Civ. A. No. 84–0759.**

United States District Court, W.D. Pennsylvania.

April 2, 1985.

J. Craig Kuhn, Kuhn Engle & Stein, Pittsburgh, Pa., for plaintiff.

Anthony J. Polito, Corcoran Hardesty Ewart Whyte & Polito, P.C., Pittsburgh, Pa., for defendants.

## OPINION

MENCER, District Judge.

The plaintiff, Charles W. Ferguson, brings this action against the defendants, Freedom Forge Corporation (hereinafter referred to as Standard Steel), Titanium Metals Corporation of America, David D. Borland and Joseph E. Wapner, to contest the termination of his employment and to recover certain benefits allegedly owed to him. This action was removed from the

Court of Common Pleas of Westmoreland County. We have jurisdiction pursuant to the Employee Retirement Income Security Act (hereinafter referred to as ERISA), 29 U.S.C. § 1001 et seq. and pendent jurisdiction.

The plaintiff alleges four separate causes of action. Count I alleges a claim under Pennsylvania law for wrongful discharge; Count II alleges a claim in assumpsit under Pennsylvania law for breach of an implied contract of employment; Count III alleges a claim under ERISA for violations of pension plan rights; and Count IV alleges a claim in quasi contract for appropriation of the plaintiff's intellectual property. Standard Steel is a defendant with respect to all four counts. Defendants Borland and Wapner, however, are named only with respect to Counts I and III. Defendant Titanium Metals Corporation of America is named only in Count III.

■ The Court has before it defendants' Motion for Summary Judgment. The plaintiff opposes the motion, contending that there are substantial issues of material fact which prevent the entry of summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Rule 56(c) provides that summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Whether or not disputed issues of material fact exist should be ascertained by resolving "all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Company*, 590 F.2d 62 (3d Cir.1978).

This action arose out of the termination of the plaintiff's employment on November 2, 1983. The plaintiff had been employed with the defendant, Standard Steel, since 1948, except for a brief period of lay off and military service. At the time of his termination, the plaintiff was employed as a General-Foreman in the Internal Trans-

portation Department of the defendant Standard Steel's Burnham, Pennsylvania plant. The plaintiff was not a member of any bargaining unit. The plaintiff alleges that his termination was a result of his continuing association with the former president of that company, Mr. Fogerty, who had been discharged previously. The plaintiff also alleges that in a meeting with three supervisors on November 2, 1983, he was accused of stealing two five gallon cans of gasoline. At this meeting, it is alleged that the plaintiff was required to choose between resigning and receiving six months severance pay, or being discharged for misconduct. The plaintiff chose to resign.

In order to facilitate discussion of the defendant's Motion, we will discuss defendants' Motion, with respect to each count, in separate sections below.

## I. *Wrongful Discharge*

In order to preclude summary judgment, there must be a disputed issue as to a material fact. Even though a dispute may exist relative to a certain fact, the court is not prevented from entering summary judgment unless that fact is material. Fed. R.Civ.P. 56(c). The defendants in this case concede that there is a factual dispute as to the reason for the plaintiff's termination. However, the defendants contend that the reason is not a material fact because even if the plaintiff's reason for his termination is assumed to be correct, the plaintiff has failed to state a claim under Pennsylvania law for wrongful discharge.

■ The plaintiff was an employee-at-will of defendant Standard Steel. The law in Pennsylvania for many years has been that an employer "may discharge an employee with or without cause, at pleasure, unless restrained by some contract." *Henry v. Pittsburgh & Lake Erie Railroad Co.*, 139 Pa. 289, 297, 21 A. 157 (1891). It is still true today that "[i]n general, there is no non-statutory cause of action for an employer's termination of an at-will employment relationship." *Reuther v. Fowl-*

er & Williams, Inc., 255 Pa.Super. 28, 31, 386 A.2d 119, 120 (1978). An exception to that general principle was recognized by the Pennsylvania Supreme Court in *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974), which held that, when the discharge of an employee-at-will threatens public policy, the employee may have a cause of action against the employer for wrongful discharge. The court stated: "there are areas of an employee's life in which his employer has no legitimate interest." The court went on to add that an employer's intrusion into one of those areas may give rise to a cause of action, particularly where "some recognized facet of public policy is threatened." *Id.* at 184, 319 A.2d at 180. The Third Circuit has interpreted *Geary* as signaling a narrow rather than an expansive interpretation of the public policy exception. *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 918 (3d Cir.1982).

In *Novosel v. Nationwide Insurance Co.*, 721 F.2d 894 (3d Cir.1983), the Third Circuit held that Pennsylvania law permits a cause of action for wrongful discharge where the employment termination abridges a significant and recognized public policy. The question we must decide is whether an averment of discharge for associating with a particular individual, which we take as true for purposes of this motion, is sufficiently violative of public policy as to state a cause of action. We hold that it does not violate a clear mandate of public policy sufficient to fall within the exception to the employee-at-will doctrine and grant defendants' Motion for Summary Judgment for Count I.

In *Novosel*, the court held an employee's discharge fell within the public policy exception since the employee's freedom of political expression was violated. The court stated that the employee's freedom of political expression involved "no less compelling a societal interest than the fulfillment of jury service or the filing of a workers' compensation claim," two situations which were held by the Pennsylvania Superior Court to fall within the public

policy exception. *Novosel*, at 899. The interest of the employee in this case, to be free to associate with Mr. Fogerty, does not rise to the same public policy level as the interest of the employee in *Novosel* to be free to express his political views.

The plaintiff, in his brief, relies on *Roberts v. United States Jaycees*, —— U.S. ——, ——, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462, 471 (1984), for the proposition that the Bill of Rights affords "the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State." However, the Supreme Court in *Roberts* discussed, in two distinct senses, the constitutionally protected freedom of association. One line of its decisions, the Court noted, protects an individual's choice to enter into and maintain certain intimate human relationships. In that regard, freedom of association receives protection as a fundamental aspect of personal liberty. Another set of decisions recognizes "a right to associate for the purpose of engaging in those activities protected by the 1st Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." This type of freedom of association is guaranteed by the constitution as a means of preserving other individual liberties. The Supreme Court noted that "the nature and degree of constitutional protection afforded freedom of association may vary depending on the extent to which one or the other aspect of the constitutionally protected liberty is at stake in a given case." *Id.* at ——, 104 S.Ct. at 3249, 82 L.Ed.2d at 471. The Court went on to state that the personal affiliations that exemplify the associational relationships, and that also suggest limitations on the relationships entitled to the constitutional protection, are those that attend the creation and sustenance of a family.

The interest of a person to associate with a particular individual who is not a family member, does not rise to the same public policy level. The plaintiff has not stated a claim under the limited public policy exception to the employment-at-will doctrine in Pennsylvania.

The same analysis may be used to determine whether the individual defendants wrongfully discharged the plaintiff. We hold that as the plaintiff failed to state a claim under the public policy exception, the defendants, Standard Steel, David Borland and Joseph Wapner, are entitled to summary judgment on Count I.

## II. *Implied Contract of Employment*

Plaintiff's second count rests on the theory of an implied contract of employment with the defendant, which allegedly was to last as long as the performance of the plaintiff's duties was satisfactory. The plaintiff alleges that, on the basis of his expectation of continued employment, he made no effort to obtain other employment.

In Pennsylvania, it is presumed that an employee serves at the pleasure of an employer and that the relationship may be terminated for any or no reason by either party at any time, absent a specific duration. *Jackman v. Military Publications, Inc.,* 350 F.2d 383, 385 (3d Cir.1965); *Henry v. Pittsburgh & Lake Erie Railroad Co.,* 139 Pa. 289, 297, 21 A. 157 (1891). This presumption may be overcome by a showing that the parties intended that the contract last for some definite period of time or for a reasonable time or by showing that the plaintiff-employee gave the defendant consideration in addition to the employee's normal services. *McNulty v. Borden, Inc.,* 474 F.Supp. 1111 (E.D.Pa. 1979). In *McNulty,* the plaintiff-employee had rejected many other offers of employment, both within and outside the food industry, in reliance on representations made to him by his superiors that he would eventually be promoted. *Id.* at 1119. The court held that it would not be unreasonable for a trier of fact to conclude that the parties intended the plaintiff's employment contract to extend for a reasonable time if those allegations were established at trial.

The Pennsylvania Supreme Court has noted, "[i]f the plaintiff had been forced to forego other employment, that may amount to additional consideration."

*Cummings v. Kelling Nut Co.,* 368 Pa. 448, 84 A.2d 323 (1951). In our case, the plaintiff simply alleges that he refrained from seeking other employment. We cannot say that abstaining from looking for another job is consideration in addition to an employee's normal services sufficient to overcome the presumption of employment-at-will. If such a representation by the plaintiff was to create an implied reciprocal promise by the employer of continuous employment, practically no employment would be terminable at will.

The plaintiff has not alleged a written contract for his services nor an oral or written promise of a job for a definite period of time. The evidence fails to establish a contract for any definite term or duration. In his own deposition, Mr. Ferguson acknowledged that he had no oral or written agreement with the defendant that led him to believe he had a job as long as he performed his work in a satisfactory manner. Mr. Ferguson stated in his deposition that he understood that he could be terminated with or without cause. Therefore, defendant Standard Steel is entitled to summary judgment on Count II.

## III. *ERISA Claims*

The third count of the plaintiff's complaint is based on his claim under ERISA for an amount equal to the difference between the amount of his pension if he were to have continued employment, and the amount of his pension based on his earnings to the date fixed by his termination, as well as a claim for a retirement bonus. Titanium Metals Corporation of America was joined in this count by reason of its being the Plan Administrator and Named Fiduciary of the Plan. Wapner and Borland were joined because of their alleged membership on the Retirement Board.

### A. Against Standard Steel

The complaint alleges that as a result of the plaintiff's unjust discharge by defendant Standard Steel, his right to receive a pension based on his service bene-

fits continuing to age 65 has been improperly terminated, in violation of his rights under the Pension Plan and under the provisions of ERISA. The applicable enforcement provision of ERISA for interference with protected rights is set forth at 29 U.S.C. § 1140, Section 510 of ERISA, as follows:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline or discriminate against a participant or beneficiary ... *for the purpose of interfering with the attainment of any right* to which such participant may become entitled under the plan, *this subchapter, or the Welfare and Pension Plans Disclosure Act.* (Emphasis added.)

An employee can recover under this provision if it can be shown that the reasons given by the employer for the plaintiff-employee's termination were pretextual and if the true purpose of the discharge was to deprive the employee of his pension rights. *Ursic v. Bethlehem Mines,* 556 F.Supp. 571 (W.D.Pa.), *aff'd in pertinent part,* 719 F.2d 670, 671 (3d Cir.1983). The court in *Ursic* held that the employer's reasons for discharging the plaintiff were pretextual. However, the employee in that case had alleged in his complaint wrongful deprivation of his pension rights by a contrived pretextual firing prior to the vesting of his rights.

■ There has been no allegation in this case that the plaintiff's employer discharged him with the intent to interfere with his pension rights. The complaint regarding the ERISA count merely alleges that, as a *result* of his unjust discharge, the plaintiff's right to receive a pension has been improperly terminated. (Emphasis added.) Paragraph 24 of the complaint incorporates by reference paragraphs 1 through 23 into Count III. In paragraph 13, the plaintiff alleges that the sole reason for his termination was his ongoing association with Mr. Fogerty. According to the court in *Titsch v. Reliance Group, Inc.,* 548 F.Supp. 983 (S.D.N.Y.1982), *aff'd* 742 F.2d 1441 (2d Cir.1983), "[n]o cause of action lies where the loss of pension benefits was a mere consequence of, but not a motivating factor behind, a termination of employment." *Id.* at 985. After full discovery in that case, no evidence was found that would have indicated that the defendants sought to interfere with the employee's pension benefits. Therefore, the court granted summary judgment on behalf of the employer and individual defendants. Similarly, after full discovery in this case, no evidence has been presented to the court that would indicate the motivation behind the plaintiff's termination was to interfere with his pension benefits. As to the third cause of action, therefore, defendant Standard Steel's motion for summary judgment is granted.

### B. Against David Borland

Count III against David Borland proceeds under the assumption that he was a member of the Retirement Board of the Plan. According to his deposition, and that of Joseph Wapner, David Borland was never a member of the Retirement Board. Therefore, summary judgment will be entered in his favor.

### C. Against Joseph Wapner

Count III is based on an allegation that Mr. Wapner, who was a member of the Retirement Board, participated in the decision to seek the plaintiff's discharge or resignation. Mr. Wapner did not participate in the meeting or in the decision to ask for the plaintiff's resignation on November 2, 1983, but he did participate in discussions regarding the situation on the previous day.

The plaintiff in paragraph 27d of his amended complaint alleges that because of Mr. Wapner's participation in and responsibility for the plaintiff's unjust termination, Mr. Wapner knew of the effect such termination would have on the plaintiff's rights and benefits under the Plan and, thus, his actions were a breach of his fiduciary duty. It is not alleged, however, that Mr. Wapner acted during those discussions with the purpose of interfering with the attainment of pension benefits by the plaintiff. Ac-

cordingly, summary judgment will be granted as to defendant Wapner.

### D. Against Titanium Metals Corporation of America

■ There is no genuine issue of material fact as to Titanium Metals Corporation of America (TMCA). Although TMCA is the Named Fiduciary and Plan Administrator, there is no evidence that it participated in the decision to ask for the plaintiff's resignation. Therefore, summary judgment will be entered in favor of TMCA.

### IV. *Cost Reduction Proposal*

The plaintiff alleges that he submitted a cost reduction proposal to the defendant which was implemented on September 13, 1983, at an annual savings to the Company of $264,047.00. The plaintiff further alleges that the defendant appropriated his intellectual property (the proposal) by realizing its monetary value without compensating the plaintiff, and the defendant has consequently been unjustly enriched. In his deposition, the plaintiff acknowledges that because of his employment with the defendant, he was only entitled to "the chance to win an award [at a dinner for salaried employees who have submitted cost reduction proposals], possibly the chance to win a $500 sum of money, or any portion thereof" for his proposal. The plaintiff stated also that the proposal would have become part of his performance appraisal.

The affidavit of David D. Borland states that "it has been the custom and practice at Standard Steel not to invite to the dinner for salaried employees who have submitted cost reduction proposals, any salaried employee who had resigned prior to the dinner." The affidavit of R.L. Ingram states that at this dinner, a raffle ticket was placed in the drawing for prizes on behalf of Charles Ferguson. It also states that:

[S]alaried employees submitting proposals resulting in a total cash savings to the Company in the calendar year of $100,000 or more also qualify for a special $200 cash award. The proposal submitted by Mr. Ferguson in 1983 did not result in a total savings to the Company of $100,000 in that calendar year and he did not therefore qualify for the special $200 cash award.

Whether summary judgment is appropriate on Count IV can be determined by applying Rule 56(e) of the Federal Rules of Civil Procedure which states:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

The plaintiff has not submitted affidavits setting forth specific facts showing that there is a genuine issue for trial. Consequently, summary judgment will be entered for defendant Standard Steel.

An appropriate order will issue.

### ORDER

AND NOW, this 2nd day of April, 1985, IT IS ORDERED that:

(1) Defendant Standard Steel's Motion for Summary Judgment is GRANTED as to Counts I, II, III and IV;

(2) Defendant David D. Borland's Motion for Summary Judgment is GRANTED as to Counts I and III;

(3) Defendant Joseph E. Wapner's Motion for Summary Judgment is GRANTED as to Counts I and III; and

(4) Defendant Titanium Metals Corporation of America's Motion for Summary Judgment is GRANTED as to Count III.

Judgment is entered in favor of the defendants, Standard Steel, David D. Borland, Joseph E. Wapner, and Titanium Metals

Corporation of America, and against the plaintiff, Charles W. Ferguson.