**Cartwright v. SCA Packaging North America LLC**

C.P. of Beaver County, no. 10187 of 2006.

*Robert Taylor,* for plaintiff.
*Abigail Flynn-Kozara,* for defendants.

KWIDIS, *J.,* March 2, 2007—The plaintiff, Edward L. Cartwright, has filed a complaint for wrongful termination of employment. Plaintiff alleges that on or about August 31, 2005, he was required to pull trailer no. 308. After pulling trailer no. 308, plaintiff had a conversation with SCA Plant Manager, Mr. Christopher Marsh. Following this exchange, plaintiff was discharged from employment. Defendants filed a motion for summary judgment alleging that the Uniform Commercial Driver's License Act is inapplicable and that plaintiff's own deposition testimony confirms that his discharge was not based upon his refusal to operate trailer no. 308.

Summary judgment is properly granted after the close of all relevant pleadings "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report" and the moving party is entitled to judgment as a matter of law.[1] The party moving for summary judgment shoulders the burden of proving the nonexistence of any genuine issue of material fact.[2] In order for a grant of summary judgment to be proper, the record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.[3] Parties seeking to avoid the imposition of summary judgment must show by specific facts in their depositions, answers to interrogatories, admissions or affidavits that there is a genuine issue for trial.[4]

Plaintiff alleges that he was wrongfully terminated pursuant to the Uniform Commercial Driver's License Act (UCDLA), 75 Pa.C.S. §1601 et seq., which prohibits against discharging, disciplining or in any manner discriminating against any employee who refuses to operate a commercial motor vehicle which is not in compliance with the provisions of 67 Pa.Code Ch. 231 and

---

1. Pa.R.C.P. 1035.2(1); *Ovitsky v. Capital City Economic Development Corporation,* 846 A.2d 124, 125 ( Pa. Super. 2004).

2. *Kafando v. Erie Ceramic Arts Company,* 764 A.2d 59, 61 (Pa. Super. 2000).

3. *Fritz v. Glen Mills School,* 894 A.2d 172, 175 (Pa. Commw. 2006) citing *Schnupp v. Port Authority of Allegheny County,* 710 A.2d 1235 (Pa. Commw. 1998).

4. *Fritz,* 894 A.2d at 175 citing *Sovich v. Shaughnessy,* 705 A.2d 942 (Pa. Commw. 1998).

existing safety laws. Plaintiff alleges that he was discharged because of his refusal to operate trailer no. 308.

In the above-captioned case the plaintiff is an at-will employee. It is well-established that Pennsylvania recognizes the at-will employment doctrine. As a general rule, a cause of action does not exist based upon an employer's termination of an at-will employment relationship. An employer may "discharge an employee with or without cause, at pleasure, unless restrained by some contract."[5]

However, as the Superior Court has noted, there are public policy exceptions to the at-will employment doctrine. These exceptions fall into three categories: an employer (1) cannot require an employee to commit crime, (2) cannot prevent an employee from complying with a statutorily imposed duty and (3) cannot discharge an employee when specifically prohibited from doing so by statute.[6] To state a cause of action for wrongful discharge based upon the public policy exception to the at-will employment doctrine, the employee must identify "a clear public policy articulated in the constitution, in legislation, an administrative regulation, or a judicial decision."[7] The plaintiff in some way must allege that some *public* policy of *this* Commonwealth is implicated, undermined, or violated because of the employer's termination of the employee.[8]

The UCDLA, a Pennsylvania statute, prohibits any person from discharging, disciplining or in any manner discriminating against any employee who "refuses to

---

5. *Spierling v. First American Home Health Services Inc.,* 737 A.2d 1250, 1252 (Pa. Super. 1999) citing *Henry v. Pittsburgh & Lake Erie Railroad Company,* 139 Pa. 289, 297, 21 A. 157 (1891).

6. *Spierling,* 737 A.2d at 1252.

7. *Nazar v. Clark Distribution Systems Inc.,* 46 D.&C.4th 28, 32 (2000).

8. *Nazar,* 46 D.&C.4th at 36.

operate a commercial motor vehicle which is not in compliance with the provisions of 67 Pa.Code Ch. 231 (relating to intrastate motor carrier safety requirements) and existing safety laws."[9] The UCDLA defines a "commercial motor vehicle" as a motor vehicle designed or used to transport passengers or property "if the vehicle has a gross vehicle weight rating of 26,001 or more pounds or such lesser rating as the department shall adopt under the provisions of section 6103(c) (relating to the promulgation of rules and regulations by department), as determined by federal regulation and published by the department as a notice in the *Pennsylvania Bulletin*."[10]

While section 1603 does not define "gross vehicle weight rating," the Vehicle Code generally defines it as "the value specified on the federal weight verification label by the manufacturer as the loaded weight of a single vehicle."[11]

The purpose of the UCDLA is to implement the Commercial Motor Vehicle Safety Act and to reduce or prevent commercial motor vehicle accidents, fatalities and injuries.[12] It is a remedial statute, which should be liberally construed to promote the public health, safety and welfare.[13] The Superior Court stated that based upon the definition of commercial motor vehicle, the legislature's focus was not on the use of the vehicle, but instead concerned about the size of the vehicle and the vehicle's contents. Hence, the legislature's concern was with the "potential hazard that is posed from such vehicles being driven on our roadways."[14]

9. 75 Pa.C.S. §1619.

10. 75 Pa.C.S. §1603.

11. 75 Pa.C.S. §102.

12. 75 Pa.C.S. §1602(a).

13. 75 Pa.C.S. §1602(b).

14. *Commonwealth v. Williams*, 425 Pa. Super. 113, 118, 624 A.2d 171, 174 (1993).

At issue in the instant case is a tractor weighing approximately 12,600 pounds and trailer no. 308 weighing 14,600 pounds. This court finds that in order to facilitate the purpose of the UCDLA, to reduce or prevent commercial motor vehicle accidents, fatalities, and injuries, the tractor and trailer no. 308, in combination, meet the weight requirements making the UCDLA applicable to this case.

Prior to the August 31, 2005 incident, the plaintiff provided a list of repairs which included trailer no. 308 and testified in his deposition that he had spoken to Mr. Marsh on three or four occasions regarding the problems with trailer no. 308.[15] On August 31, 2005, the plaintiff brought trailer no. 308 from the Darlington warehouse, which is approximately 13 miles from New Brighton. Plaintiff related to Marsh that he had brought trailer 308 back and that "it's going to need repairs. It was the only empty trailer out there and that's why I brought it back and that before I took it out again, the repairs would have to be done on it." [16] The comment led to an altercation between the two men, which ended in Mr. Marsh firing the plaintiff. Defendants argue that plaintiff's discharge resulted from his gross insubordination towards SCA Plant Manager and was unrelated to any alleged refusal to drive trailer no. 308.

This court finds that there is a question of fact regarding whether plaintiff was discharged because of his refusal to operate trailer no. 308 in that the altercation, and ultimate discharge, stemmed from plaintiff's discussion

15. Plaintiff's deposition pages 35-36.

16. Plaintiff's deposition page 46.

regarding the repairs to trailer no. 308 and his statement that the trailer would need repairs before he would take it out again. As such, this court holds that the UCDLA provides a public policy exception to the at-will employment doctrine and defendant's motion for summary judgment is denied.