**[J-4-2023] [MO: Brobson, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | |
|---|---|
| CARA SALSBERG, | : No. 7 EAP 2022 |
| | : |
| Appellant | : Appeal from the Judgment of |
| | : Superior Court entered on |
| | : September 15, 2021 at No. 623 EDA |
| v. | : 2019 affirming the Order entered on |
| | : January 17, 2019 in the Court of |
| | : Common Pleas, Philadelphia |
| DONNA MANN AND DREXEL | : County, Civil Division at No. |
| UNIVERSITY, | : 170603584. |
| | : |
| Appellees | : ARGUED: March 7, 2023 |

**CONCURRING AND DISSENTING OPINION**

**CHIEF JUSTICE TODD**                    **DECIDED: February 21, 2024**

The majority recognizes the tort of intentional interference with the performance of contract by a third party in the context of an at-will employment relationship. In doing so, however, the majority misapprehends our Commonwealth's long-held view of the at-will employment doctrine by casting it as its opposite, as contractual. As well, the majority underappreciates that the tort's ambiguous, subjective, and unpredictable nature will serve to weaken the at-will employment doctrine, bringing it closer to a *de facto* "just cause" standard, and discounts the negative effects its holding will have on Pennsylvania businesses. For the reasons that follow, I dissent from the adoption of this tort in the at-will employment setting, and, thus, respectfully, concur only in denying relief.

For over 150 years, Pennsylvania has assiduously preserved the utility and simplicity of the at-will employment doctrine, allowing only narrow exceptions involving matters implicating public policy. *See, e.g.*, *Weaver v. Harpster*, 975 A.2d 555, 556 (Pa.

2009); *Henry v. Pittsburg & L. E. R. Co.*, 21 A. 157, 157 (Pa. 1891); *Peacock v. Cummings*, 46 Pa. 434, 437 (Pa. 1864). An at-will employment relationship is of indefinite duration, and may be ended at any time — by either party. Specifically, an employee can leave his or her employment at any time and for any reason. Equally, an employer may discharge the employee at any time and for any reason, except if the reason violates a statutory prohibition or a recognized public policy. *Weaver*, 975 A.2d at 564.

Section 766 of the Restatement (Second) of Torts is entitled "Intentional Interference with Performance of Contract by Third Person." Restatement (Second) of Torts § 766.[1] Under the Restatement's articulation of the tort, and our case law, recovery requires the satisfaction of four elements.[2] The first element, consistent with the tort's title, requires the existence of a contract between the complainant and a third party. In this context, that would require a contract between the employee and his employer. Thus, by name and requirement, the existence of a *contract* is central to the recognition of a cause of action for the intentional interference with the performance of a contract by a third party. As noted above, the at-will employment doctrine, foundationally, is not based upon a contractual relationship. Indeed, it is defined by the absence of a contract; a contract, or even an implied contract, strips an employer-employee relationship of its at-

---

[1] Section 766 provides in full: "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." Restatement (Second) of Torts § 766.

[2] In *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175, 1182 (Pa. 1978), our Court set forth the elements to state a cause of action for intentional interference with contractual relations: (1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct.

will status. *See Weaver*, 975 A.2d at 562 ("absent a statutory or contractual provision to the contrary, either party may terminate an employment relationship for any or no reason"); *id.* at 563 ("These cases demonstrate that the strong presumption of all non-contractual employment relations is at-will."); *Geary v. United States Steel Corporation,* 319 A.2d 174, 176 (Pa. 1974) ("Absent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason."); *Henry,* 21 A. at 157 ("A railroad corporation, or an individual, may discharge an employe with or without cause at pleasure, unless restrained by some contract . . . ."). For this foundational reason, our Court should not recognize the tort of intentional interference with the performance of a contract by a third party in the context of an at-will employment relationship, as no contract exists to be interfered with.[3]

Related thereto, the tort's second element under Section 766 requires the defendant to "induc[e] or otherwise caus[e] the third person not to perform the contract." Our case law requires an intent by the defendant to harm the plaintiff by purposely causing "a third person not to [] perform a contract with" the plaintiff. *Adler*, 393 A.2d at 1182-83. What is the contract that Donna Mann allegedly induced the third party, Drexel University, not to perform? It must be a contract for continued employment. Indeed, that is the gravamen of Carl Salsberg's complaint. Salsberg Complaint at ¶ 9 ("Defendant Mann . . . intentionally interfered with [Salsberg's] employment contract with Drexel University which resulted in [Salsberg's] termination."); *id.* at ¶ 89 ("Mann acted in her own selfish capacity when she induced Drexel University to terminate [Salsberg's] employment."); *id.*

---

[3] I acknowledge that the Restatement (Second) of Torts and various states have conceptualized the at-will employment relationship as contractual, *see, e.g.*, Majority Opinion at 22 n.13; however, as discussed herein, this is not the law in Pennsylvania.

at ¶ 92 ("Defendant Mann was abusive, harassing, insulting and deliberately lied about [Salsberg's] conduct for the sole purpose of terminating her.").

Critically, however, under Pennsylvania's articulation of the at-will employment doctrine, there can be no contract for continued employment. There is no prospective employment relationship, nor an expectation of one. Rather, the relationship is an indefinite one. As observed by the Superior Court, at-will employment offers "nothing more than a mere hope," as either party may terminate the employment relationship at any time, for any or no reason — literally on a whim. *Salsberg v. Mann*, 262 A.3d 1267, 1271 (Pa. Super. 2021). That is the essence of the doctrine. Simply stated, interference with an employment relationship that is terminable at will cannot be actionable under an interference with contract theory because, when a party terminates such a relationship, there is no breach of contract. As such, it is impossible for an at-will employee to satisfy the tort's second element of inducing or causing a third-party employer not to perform an employment contract — again, there is no contract.

Indeed, it is for this reason that the theory that an employee possesses an expectation of continued employment until termination, *see* Majority Opinion at 24, which serves as the basis for the tort, must fail. An expectation interest is a legally recognizable interest, *based upon contract*, which is implicated in formulating a remedy for a breach of that contract. *See* Restatement (Second) of Contracts § 344 (1981) ("Judicial remedies under the rules stated in this Restatement serve to protect one or more of the following interests of a promisee: (a) his 'expectation interest,' which is his interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed . . . ."); *id.* ("The law of contract remedies implements the policy in favor of allowing individuals to order their own affairs by making legally enforceable promises. Ordinarily, when a court concludes that there has been a breach

of contract, it enforces the broken promise by protecting the expectation that the injured party had when he made the contract."); *Trosky v. Civil Service Commission, City of Pittsburgh*, 652 A.2d 813, 817 (Pa. 1995) ("In addressing the concept of remedies generally, we may note that in the law of contracts remedies for breach are designed to protect . . . a party's expectation interest 'by attempting to put him in as good a position as he would have been had the contract been performed, that is, had there been no breach.'"). Thus, as there is no contract for continued employment under the at-will employment doctrine, there can be no expectation interest in continued employment which can be thwarted.

Furthermore, injecting an expectation of continued employment into the at-will employment paradigm could alter, or at a minimum cloud, the employment rights of government employees, at least with respect to the right to a notice and hearing which hinges on the employee's expectation interest. *See Delliponti v. DeAngelis*, 681 A.2d 1261, 1263 (Pa. 1996) ("An individual employed by a government agency does not enjoy a property right in her employment unless she has an expectation of continued employment. . . . That expectation may be guaranteed by statute, contract, or be quasi-contractual in nature. If the individual has such an expectation, she is entitled to notice and a hearing under Local Agency Law, 2 Pa.C.S. § 553. . . . If, however, the individual does not have an expectation of continued employment, she is an at-will employee who does not have a right to a hearing." (citations omitted)).

Finally, the majority frankly acknowledges the danger of "eviscerating our at-will employment principles and stifling employers' ability to structure and conduct their business as they choose," Majority Opinion at 29-30, but hopes for a "limited impact" of this newly embraced tort on the at-will employment doctrine and urges our courts to be "vigilant" in this regard. *Id.* at 30, 31. Make no mistake, as set forth below, today's

decision will have a significant impact on employment law in our Commonwealth, as the vast majority of workers in Pennsylvania are at-will.

First, the workplace requires clear guidelines as to acceptable and unacceptable conduct. Yet, the standard for recovery under the tort of intentional contractual interference is multi-factored, subjective, and depends upon the particular circumstances of a case, leaving officers, supervisors, and managers to guess as to what constitutes "improper" conduct (or "unprivileged" conduct in the majority's parlance) and whether their actions are within their scope of employment or authority.

Regarding whether the challenged conduct is "improper," this assessment is made by applying a multi-factor balancing test which includes considerations of "the nature of the actor's conduct," "motive," "the interests sought to be advanced," "social interests," and concepts of "remoteness."[4] Restatement (Second) of Torts § 767. Regarding

---

[4] Section 767 of the Restatement provides:

> In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:
>
> (a) the nature of the actor's conduct,
>
> (b) the actor's motive,
>
> (c) the interests of the other with which the actor's conduct interferes,
>
> (d) the interests sought to be advanced by the actor,
>
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
>
> (f) the proximity or remoteness of the actor's conduct to the interference and
>
> (g) the relations between the parties.

(continued…)

whether an officer, supervisor, or manager's actions are within his or her scope of employment or authority, the majority adopts Restatement (Second) of Agency § 228. As with the definition of "improper" conduct, this "scope of employment" litmus lacks clarity, and is defined by a fact-specific, multi-factor, conjunctive test.[5] Section 228 is fraught with subjectivity, implicating questions of what precisely is "authorized," whether conduct is "substantially within" or "far beyond" time or space limits, and whether it is "too little actuated" by a purpose to serve the employer. *Id.* § 228. Both of these assessments — requiring improper conduct and scope of employment or authority — are situation-driven, amorphous, and subjective, and will lead to an increase in litigation, with most cases

---

Restatement (Second) of Torts § 767. The Restatement commentary indicates that its drafters settled on the term "improper" as a "single word that will indicate for this tort the balancing process expressed by the two terms 'culpable and not justified.'" *Walnut St. Associates, Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 475 n.9 (Pa. 2011). The commentary adds that "Section 767 specifies and analyzes the factors to be taken into consideration in determining whether the interference is improper, and must therefore be read and applied to each of the earlier sections . . . . Sections 768–773 state specific applications of the factors set out in § 767 to certain types of factual patterns." *Id.*

[5] Section 228 provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
> (a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and space limits;
>
> (c) it is actuated, at least in part, by a purpose to serve the master, and
>
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency § 228.

going to trial to resolve contested facts, placing a heavy burden on businesses and our judicial system.

Perhaps more importantly, as a result of this circumstance-driven and inherently ambiguous construct, the importation of this intentional interference tort has the potential to alter the freedom inherent in the at-will employment doctrine and shift it towards one where terminations are for only "just cause." Specifically, because of the vagueness of the tort — and the resulting uncertainty as to whether an officer, supervisor, or manager is acting within his scope of employment or authority, or whether his conduct is improper or unprivileged — and the threat of legal action, a supervisor, when considering an adverse employment action such as termination, will, as a practical matter, terminate an employee only for "just" reasons, *i.e.*, a just cause discharge. This undermines the nature of the at-will employment doctrine, essentially transforming it into a *de facto* "just cause" framework, thereby curtailing an employer's prerogative to discharge an employee for any reason. Whether imposing a just cause requirement for termination upon employers is desirable is debatable, but the creation of exceptions or alterations to the at-will employment doctrine are generally for the General Assembly and not for the courts.[6]

Moreover, the majority's decision will not impact only employee terminations. An adverse employment action such as a demotion, suspension, or even a warning placed in an employee's personnel file could serve as the basis for a cause of action under this tort. The candid nature of performance evaluations will be chilled by the threat of litigation.

---

[6] In the at-will employment context, and with respect to the evolution of this common law doctrine, our Court has been clear that "it is for the legislature to formulate the public policies of the Commonwealth." *Weaver*, 975 A.2d at 563. The right of a court to declare the common law as to public policy exists "only when a given policy is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it." *Id.* (quoting *Mamlin v. Genoe (City of Philadelphia Police Beneficiary Association),* 17 A.2d 407, 409 (Pa. 1941)). Indeed, our Commonwealth's traditional view is "that exceptions to at-will employment should be few and carefully sculpted so as not to erode an employer's inherent right to operate its business as it chooses." *Id.*

A former employer responding to a new employer's request for a job reference for a probationary employee will be hard pressed to give anything more than the dates of employment in light of a potential action for the intentional interference with contractual relations. Similarly, a former employer's attempt to enforce a noncompete agreement through a demand that a competing employer terminate or alter a new employee's status could subject the former employer to liability.

In summary, it is inconsistent with Pennsylvania's at-will employment doctrine to allow for a contract-based tort of this nature, and the majority's well-meaning attempt to inject it into the at-will employment context will not only shift the doctrine closer to a just cause framework, but will bring increased litigation and confusion to the workplace. For these reasons, I respectfully dissent from the majority's adoption of the tort of the intentional interference with the performance of a contract by a third party in the context of at-will employment. However, I concur in the result, as the majority ultimately denies relief to Salsberg, the plaintiff who advanced this theory of recovery below.